UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CLIFFORD HARDER and TABAITHA VITAL,** individually and on behalf of all other similarly situated<br><br>*Plaintiffs*<br><br>**VERSUS**<br><br>**COASTAL STAFFING SERVICES, LLC**<br><br>*Defendant* | § § § § § § § § § § § § § § § § | CIVIL ACTION NO:_____<br><br><br><br><br><br><br><br>**JURY DEMAND HEREIN** |

## CLASS AND COLLECTIVE ACTION COMPLAINT

NOW COME Plaintiffs, **CLIFFORD HARDER and TABAITHA VITAL,** on behalf of themselves and all other individuals similarly situated, by and through their attorney **JAMES E. SUDDUTH, III**, who file this Class and Collective Action Complaint against Defendant, **COASTAL STAFFING SERVICES, LLC**, and hereby aver as follows:

### NATURE OF ACTION

1. This is a Class and Collective Action Complaint brought to obtain injunctive and monetary relief on behalf of a class of individual employees, who Defendant has failed to pay regular and overtime wages for hours worked to provide relief to the victims of Hurricane Harvey devastation. Plaintiffs allege violations of the federal

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201 *et seq*., and the Louisiana Wage Payment Act, La. R.S. §§ 23:631 *et seq*.

2. Defendant is a staffing company that employs individuals to provide temporary, temporary-to-hire, direct hire, contract, and payroll services for its clients. At all times relevant to this Complaint, Defendant employed individuals on a temporary basis to travel to homes and provide disaster relief to those affected by Hurricane Harvey devastation.

3. The FLSA collective group consists of all individuals employed by Defendant to provide Hurricane Harvey relief and home restoration. Plaintiffs bring their remaining state-law claim on behalf of the same group of individuals as a class.

4. This action challenges Defendant's denial to Plaintiffs and the Class of rights, obligations, privileges, and benefits owed to them as employees under the FLSA, including minimum wages and overtime pay. Plaintiffs also assert that Defendant violated the Louisiana Wage Payment Act, La. R.S. §§ 23:631, by failing to pay regular and overtime premium wages.

**PARTIES**

5. Plaintiff, Clifford Harder, is a resident of Calcasieu Parish, Louisiana who worked for the Defendant in that state. He performed work as a crew member, or general laborer. Plaintiff Harder operated out of Coastal's Sulphur location, located at 3813 Maplewood Drive, Sulphur, LA 70663. Plaintiff Harder worked for Defendant for four (4) days and did not receive any regular or overtime premium pay at any time.

6. Plaintiff, Tabaitha Vital, is a resident of Harris County, Texas who worked for Defendant in that state. She performed work as a crew leader and subsequently as a supervisor. Plaintiff Vital operated out of Coastal's Baytown and Beaumont locations. Plaintiff Vital worked for Defendant for eight (8) days and received only partial payment for her regular and overtime hours worked. She was not compensated fully for the regular and overtime hours she worked.

7. Coastal Staffing Services, LLC ("Coastal") is a Louisiana limited liability company domiciled in Louisiana. Upon information and belief, Brett Feldes, a member and manager of Coastal, resides in Calcasieu Parish, State of Louisiana. Further, Lori Morrison, who upon information and belief owns a part of Coastal, resides in Calcasieu Parish, State of Louisiana. Coastal hired individuals to provide Hurricane Harvey disaster relief to various locations spanning from Houston, Texas to Lake Charles, Louisiana.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States.

9. This Court may exercise supplemental jurisdiction over the state law claims set forth in this Complaint pursuant to 28 U.S.C. § 1367(a). The federal and state claims involve substantially the same facts and allege the same wrongs, namely the intentional wrongful nonpayment of regular wages and overtime premiums to Plaintiffs and all others similarly

situated.

10. Upon information and belief, the Class (and identical collective-action group) has between five hundred (500) and seven hundred (700) members, and the amount in controversy, in the aggregate, exceeds $7.5 million exclusive of interests and costs.

11. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in the Western District of Louisiana, specifically in Calcasieu Parish, making the Lake Charles division the most appropriate Division for this suit.

12. Plaintiffs bring this action on behalf of themselves, a Federal Collective Group, and a Louisiana Class, as hereinafter defined.

## COLLECTIVE ACTION ALLEGATIONS

13. Plaintiffs bring Counts I and II of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant or otherwise, performed disaster relief work and restoration for Defendant, and who have not received full compensation of the minimum wage and overtime premiums (collectively "Covered Personnel") anywhere at any time in the United States within the two (2) months preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C §216(b).

The "Federal Collective Group" includes the Plaintiffs named in this action. Plaintiffs reserve the right to modify this definition prior to conditional certification of the collective group.

14. Plaintiffs, along with other former employees of Defendant, are similarly situated in that they had substantially similar job requirements, pay provisions, and were subject to Defendant's common practice, policy, or plan of controlling their daily job functions. All positions were required to provide some form of demolition work, with the crew leader being the individual who drove the rest of the crew to the site, the supervisor being the individual who communicated with the homeowners to ensure crews were staying on task, the superintendent ensuring all demolition functions were running smoothly, and HR personnel to ensure that all time sheets were being properly submitted after the crews returned from the day's work location.

15. Defendant not only permitted, but required and encouraged Plaintiffs and members of the Federal Collective Group to work more than forty (40) hours per week.

16. Upon information and belief, Defendant knows that Plaintiffs and all similarly situated individuals performed work that required minimum wage pay and overtime pay.

17. Defendant has therefore operated under a scheme to deprive these employees of regular and overtime compensation by failing to properly compensate them for all time worked.

18. Defendant's conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiffs and all similarly situated individuals.

19. Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) because the Plaintiffs' claims are similar to the claims of other Covered Personnel who worked for Defendant.

20. Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendant and are readily identifiable through

Defendant's records.

## CLASS ACTION ALLEGATIONS

21. Plaintiffs bring Count III of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Louisiana Class" as defined as follows:

    > all individuals who, through a contract with Defendant or otherwise, performed disaster relief work and restoration, or were associated with such, for Defendant, and who have not received full compensation of the minimum wage and overtime premiums (collectively "Covered Personnel") anywhere at any time in the United States within the two (2) months preceding the commencement of the applicable prescriptive period under the Louisiana Wage Payment Act through the close of the Court-determined opt-out period.

    Plaintiffs are included in the Class and reserve the right to redefine the Class prior to class certification.

22. Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. At this time, 97 individuals have retained undersigned counsel to represent them in this matter and over 250 individuals have attempted to contact undersigned counsel but have not yet signed engagement letters. The precise number of Class members is unknown to Plaintiffs; however, upon information and belief, it is in excess of three hundred (300) individuals. The true number of Class members is, however, likely to be known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

23. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

    a. Whether Defendant has violated the rights of Plaintiffs and members of the class under the FLSA by intentionally refusing to compensate them for the regular hours they worked pursuant to 29 U.S.C. § 206;

    b. Whether Defendant has violated the rights of Plaintiffs and members of the Class under the FLSA by intentionally refusing to compensate them for the overtime hours they worked pursuant to 29 U.S.C. § 207;

    c. Whether Defendant has violated the rights of Plaintiffs and members of the Class under the Louisiana Wage Payment Act by intentionally refusing to compensate them for the hours they worked, including regular work hours and overtime hours;

    d. Whether the Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class.

24. Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs did not receive full payment of the wages and overtime premiums they are owed pursuant to the restoration work and hurricane relief they provided during their employment with Defendant. Plaintiffs had the same duties and responsibilities as other Class members. Further, they were subject to the same policies and practices and the same or substantially similar conditions of employment.

25. Adequacy: The named Plaintiffs will adequately represent the interests of the Class. They have been treated in the same manner as other Class Members by Defendant and have been damaged by this treatment in the same manner as other Class Members by their loss of regular wages and overtime premium wages. Plaintiffs are committed to vigorously prosecuting this action. Plaintiffs have retained an attorney who is well qualified to handle lawsuits of this type. Plaintiffs have no interests adverse to those of the class.

26. Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability predominate over any individual questions, including the days worked, the relative dates of termination, and the resulting amount of damages incurred by each employee.

27. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Louisiana Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship for the litigants and the Court and would create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

---

**FACTUAL ALLEGATIONS**

---

28. Defendant Coastal is a Louisiana limited liability company whose business consists of providing temporary, temporary-to-hire, direct hire, contract, and payroll employees for its clients. Coastal, at all times relevant to this suit, operated two offices, one located at 3813 Maplewood Drive, Sulphur, LA 70663, and the other located at 2517 Nederland Avenue, Nederland, TX 77625. At all times relevant to this Complaint, Coastal provided temporary labor for restoration and relief efforts throughout the entire region – ranging from Houston, Texas to Lake Charles, Louisiana – affected by Hurricane Harvey.

29. Upon information and belief, the Defendant employed between five hundred (500) and eight hundred (800) individuals to provide hurricane disaster relief to those affected by the

destruction of Hurricane Harvey. Upon information and belief, Coastal began staffing employees around August 28, 2017.

30. Upon information and belief, Defendant, through one of its agents of officers, posted an advertisement on Facebook stating that they were setting up at the Sulphur Holiday Inn located at 330 Arena Road, Sulphur, LA 70665 to hire laborers, crew leaders, and supervisors to start disaster relief work immediately. Upon information and belief, Defendant also posted an advertisement on Facebook stating that they were setting up at the Exxon MOB Parking Lot, 2800 Decker Rd., Baytown, TX 77520.

31. Upon information and belief, the employment agreement between Defendant and Plaintiffs had no specific end date and could be terminated by either party at any time.

32. Plaintiffs and other Class Members responded to Defendant's post by traveling to and filling out applications at the Sulphur Holiday Inn located at 330 Arena Road, Sulphur, LA 70665. The rates of pay promised to workers ranged from $11.00 to $20.00 per hour, and each worker was promised per diem pay of between $35.00 and $100.00. The hourly and per diem amount promises depended upon which position employees were given: crew member (laborer), crew leader, or supervisor.

33. Plaintiff Harder was employed by Defendant as a crew member. As such, Plaintiff was not and is not classified as an administrator, executive, or professional. His rate of pay was $14.00 per hour. His per diem rate was $100.00. Plaintiff Harder was to be paid an hourly rate and a per diem rate.

34. Plaintiff Harder's job duties included basic demolition functions, including but not limited to: gathering trash and debris, tearing out sheetrock, pulling up carpet, and removing furniture and other household items damaged by the flood. These duties do not qualify

Plaintiff as an administrator, executive, or professional.

35. Plaintiff Vital was initially employed by Defendant as a crew leader. As such, Plaintiff Vital was not and is not classified as an administrator, executive, or professional. Plaintiff Vital's duties mirror those set forth in Paragraph 33. The only additional task Plaintiff Vital performed was driving other crew members (laborers) between work sites. Her rate of pay was $14.00 per hour. Her per diem rate was $90.00. Plaintiff Vital was to be paid an hourly rate and a per diem rate.

36. Plaintiff Vital was subsequently employed by Defendant as a supervisor. As such, Plaintiff Vital was not and is not classified as an administrator, executive, or professional. Plaintiff's duties were to drive between work sites, discuss the status of the job with homeowners, and supervise the crews to ensure the demolition work was being completed satisfactorily. She was to report to upper management for Coastal – she did not have any administrative duties whatsoever. Her rate of pay was $20.00 per hour. Her per diem rate was $90.00. Plaintiff Vital was to be paid an hourly rate and a per diem rate.

37. As an economic reality, Plaintiffs and other members of the Class were dependent upon and controlled by Defendant, and were not in business for themselves. The work performed by Plaintiffs is an integral part of Defendant's business. The work performed by Plaintiffs does not require the exercise of any special technical skills or judgment. Plaintiffs did not exercise any meaningful control over the work performed.

38. The relationship between each member of the Class and Defendant is essentially the same in material respects. Regardless of position title, Plaintiffs and other members of the Class were hired on a temporary basis, were promised between $11.00 and $20.00 per hour of work, and were promised per diem pay of between $35.00 and $100.00 to perform various

functions surrounding the demolition and cleanup of homes affected by Hurricane Harvey.

39. Plaintiffs and other members of the Class were required to strictly follow Defendant's instructions and adhere to policies and procedures negotiated between Defendant and the homeowners allowing employees to enter their homes to perform restoration work.

40. Plaintiffs and other members of the Class were directed by Defendant to report to a specified parking lot at 6:00 a.m., where they would be assigned to a crew and then allotted a particular location to which they would travel and provide disaster relief.

41. On multiple occasions, when Plaintiffs arrived at the parking lot at 6:00 a.m., Defendant's employees were preoccupied with allowing new workers to fill out applications on-site. Oftentimes, workers would not be deployed until around 10:00 or 11:00 a.m. due to the unorganized operations of Defendant.

42. On multiple occasions, Plaintiffs and other members of the Class arrived at a home only to find that two or three other crews had already started work at that location. Defendant did not accurately record which homes were being tended to at any given time.

43. Plaintiff Harder worked, on average, a total of eighty-four (84) hours during a seven-day workweek for which Plaintiff Harder nor, upon information and belief, any member of the Class, has received full regular wages and overtime premium wages.

44. Plaintiff Vital worked a total of eighty-nine-and-a-half (89.5) hours during her eight-day employment with Defendant. Upon information and belief, neither Plaintiff Vital nor any member of the Class has received full regular wages and overtime premium wages.

45. At the end of each work day, each employee was required to sign a "group time sheet" which required the following: 1) Labor firm name; 2) Date; 3) Homeowner name; 4) Home address; 5) Names and Last 4 numbers of social security number for the crew leader and

all crew members; 6) the start time; 7) the end time, and 8) the supervisor's signature authorizing the document. Lastly, the form required all employees to sign out by filling in their signature at the bottom of the page, namely to verify the hours worked and that the employee had not witnessed any worksite injury. These forms were to be turned in to the supervisor on duty.

46. At all relevant times, Plaintiffs and other members of the Class properly filled out and signed the required timesheets.

47. Supervisors and crew members were often transferred between crews, and many group time sheets were never properly submitted to Defendant.

48. On September 7, 2017, a large number of individuals arrived at Coastal's Baytown location to address Coastal's nonpayment of employee wages. Upon information and belief, Coastal closed its Baytown location at that time, sending the employees to its Beaumont and Sulphur locations. Employees stood outside the Coastal office to demand payment of their rightly owed wages.

49. On September 15, 2017, a large number of individuals arrived at Coastal's Sulphur location to address Coastal's nonpayment of employee wages. Upon information and belief, Coastal closed its Sulphur location at that time. Employees stood outside the Coastal office to demand payment of their rightly owed wages.

50. Plaintiffs and other Class Members did not receive their regular rate of pay for the hours worked. They either have not received any pay from Defendant whatsoever, or they have received a check for an amount much lower than the wages to which they are entitled.

51. Plaintiffs and other members of the class worked in excess of forty (40) hours per workweek, and thus are entitled to overtimes wages equal to time-and-a-half for those

hours pursuant to 29 U.S.C. § 207. Employees either have not received any pay from Defendant whatsoever or have received a check for an amount much lower than the wages to which the employees are entitled.

52. Because Defendant has refused to pay Plaintiffs and members of the Class the hourly wage and overtime premium associated with their respective hours of work, they were denied the compensation to which they are entitled by law.

---

**COUNT I:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**UNPAID MINIMUM WAGES**
*Pursuant to 29 U.S.C. § 203 et seq.*

---

53. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

54. Plaintiffs were non-exempt employees of Defendant within the meaning of the FLSA.

55. Defendant was, at all material times, an employer within the meaning of the FLSA.

56. Pursuant to 29 U.S.C. §206(a)(1), every employer shall pay its employees who in any workweek is engaged in commerce or production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce wages at the required rates.

57. There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

58. For purposes of the FLSA, the employment practices of Defendant were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of the United States in which Defendant conducts business.

59. Plaintiffs and other members of the Federal Collective Group regularly worked more than

forty (40) hours per week but did not receive payment of minimum wage per hour worked.

60. Upon information and belief, at all relevant times, Defendant had gross operating revenues in excess of $500,000.00.

61. In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that it knowingly, deliberately, and intentionally failed to pay minimum wages to Plaintiffs and other members of the Federal Collective Group.

62. As a result of Defendant's willful failure to pay minimum wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

63. Plaintiffs were not paid minimum wages by the Defendant for the time periods stated above.

64. Defendant's violation of the FLSA was willful and intentional.

65. Therefore, Plaintiffs demand that he and other members of the Federal Collective Group be paid at least minimum compensation as required by the FLSA for every hour worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorney's fees as provided by law.

---

**COUNT II:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**UNPAID OVERTIME WAGES**
*Pursuant to 29 U.S.C. § 203 et seq.*

---

66. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

67. Plaintiffs were non-exempt employees of Defendant within the meaning of the FLSA.

68. Defendant was, at all material times, an employer within the meaning of the FLSA.

69. Plaintiffs worked in excess of forty (40) hours per week. For those weeks, Plaintiffs are

entitled to overtime pay at a rate of 1.5 times their regular rates of pay pursuant to the Act.

70. Section 207(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

71. There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

72. For purposes of the FLSA, the employment practices of Defendant were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of the United States in which Defendant conducts business.

73. Plaintiffs and other members of the Federal Collective Group regularly worked more than forty (40) hours per week, but did not receive overtime pay.

74. Upon information and belief, at all relevant times, Defendant had gross operating revenues in excess of $500,000.00.

75. In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that it knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiff and other members of the Federal Collective Group.

76. As a result of Defendant's willful failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

77. Therefore, Plaintiffs demand that he and other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked

in any work week for which they were not compensated, plus interest, damages, penalties, and attorney's fees as provided by law.

## COUNT III:
## VIOLATION OF THE LOUISIANA WAGE PAYMENT ACT
*Pursuant to La. R.S. §§23:631 et seq.*

78. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

79. It is unlawful under Louisiana law for an employer to require or permit an employee to work without paying compensation for all hours he or she works.

80. It is unlawful under Louisiana law for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime. *Kidder v. Statewide Transp., Inc.*, 2013-594 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875.

81. Pursuant to La. R.S. §§23:631(A)(1)(a)-(b), upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen dates following the date of the discharge or resignation, whichever occurs first.

82. Defendant, through its policies and practices described above, willfully violated La. R.S. §23:631 throughout the Louisiana Class Period, and continuing through present, as follows:

    a. By failing to pay Plaintiffs and other members of the Class their earned wages for all hours worked;

  b. By failing to pay Plaintiffs and other members of the Class overtime pay;

  c. By failing to make, keep, and preserve accurate time records with respect to the Plaintiffs and other members of the Class sufficient to determine their wages and hours; and

  d. By other practices to be fully uncovered upon trial of this matter.

83. Defendant's actions, described above, constitute a continuing willful violation of La. R.S. §§ 23:631.

84. As set forth above, Plaintiffs and other members of the Louisiana Class have sustained losses in compensation as a proximate result of Defendant's violation of Louisiana law. Accordingly, Plaintiffs, on behalf of himself and the Louisiana Class members, seek damages in the amount of their unpaid earned compensation, penalties in accordance with La. R.S. §23:632, and reasonable attorney's fees taxed as costs to be paid by the Defendant.

## PRAYER

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment against Defendant, providing the following relief:

a) An Order certifying the Federal Collective Group and the Louisiana Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b) An Order declaring the Defendant's conduct as willful, not in good faith, and not based on reasonable grounds;

c) An Order requiring Defendant to compensate Plaintiffs and the other members of the Class for the reasonable value of the benefits Plaintiffs provided to Defendant;

d) Reimbursement of unpaid wages and overtime rates for all overtime work as described in this Complaint;

e) Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

f) Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

g) Award Plaintiffs reasonable attorneys' fees and costs;

h) Award Plaintiffs and the other members of the Class punitive damages in an amount to be determined at trial; and

i) Grant such other and further legal and equitable relief as this Court deems just and necessary.

---

### DEMAND FOR JURY TRIAL

---

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: November 7, 2017

*{SIGNATURE PAGE TO FOLLOW}*

**RESPECTFULLY SUBMITTED**,

**SUDDUTH AND ASSOCIATES, LLC**
Attorneys at Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Telephone:   (337) 480 – 0101
Fax:              (337) 419-0507

BY: *James E. Sudduth, III*
    JAMES E. SUDDUTH, III (#35340)
    LORI L. NUNN (#20311)
    KOURTNEY L. KECH (#37745)
    ADRIEN R. LORRAIN (#37494)

    Attorneys for *Clifford Harder, Tabaitha Vital, and all others similarly situated*